## Appeal of LUKE & FLEMING, INC.        Docket 37.

To entitle a taxpayer to deduct from gross income, as a bad debt, an item ascertained to be worthless and charged off in a given year, such a debt must have had an existence in fact. A nonexisting debt can not be ascertained to be worthless and charged off to support a deduction from gross income as a bad debt, under section 234(a) (5), Revenue Act of 1918.

Submitted September 19, 1924; decided October 3, 1924.

*G. S. Alexander, C. P. A.*, for the taxpayer.

*J. D. Foley, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

### FINDINGS OF FACT.

1. Luke & Fleming, Inc., is a Georgia corporation, with its principal place of business at Augusta, Ga. This taxpayer is a cotton

factor, and its principal business is storing and selling of cotton for its customers, advancing them money upon cotton so stored with it, and charging said customers interest, insurance, storage, selling commissions, etc., for handling said cotton.

2. Under its contract of storage the taxpayer became liable to its customers as insurer of the cotton so stored. To protect itself against this liability, the taxpayer entered into contracts of insurance with certain insurance companies, under which contracts the insurance companies insured taxpayer against loss of this cotton by fire. This contract was evidenced by certain policies of insurance covering the cotton in question.

3. In addition to issuing to the taxpayer the policies of insurance above referred to, the insurance companies issued to the taxpayer so-called "Certificates of insurance." These were separate and distinct documents from the policies of insurance. These certificates of insurance were written instruments certifying to the fact that the makers thereof, the insurance companies, had insured certain designated cotton in the custody of the insured taxpayer, by and under specific policies of insurance the numbers of which were indicated in the certificates. The purpose of the issuance of these certificates of insurance was to enable the insured to retain in his possession the policies of insurance and at the same time hypothecate the certificates as security for money borrowed by the insured. This obviated the necessity of assigning the policies of insurance and was intended to serve the same purpose.

4. The taxpayer, some time prior to March 22, 1916, had borrowed money and as security for the loan had hypothecated certain bills of lading and warehouse receipts and similar evidences of taxpayer's legal title to the cotton they represented. In addition thereto the taxpayer had hypothecated certain of the certificates of insurance above mentioned representing the policies of insurance covering the cotton so pledged as security.

5. On the afternoon of March 22, 1916, the policies of insurance covering the cotton in question were surrendered by the taxpayer to the insurance companies issuing them, for cancellation. The certificates of insurance representing these policies were not surrendered for cancellation but remained in the hands of the pledgee with whom they had been hypothecated.

6. On the night of March 22, 1916, fire destroyed the taxpayer's warehouse and with it the cotton of taxpayer's customers, which had been covered by the insurance policies surrendered for cancellation on the afternoon before the fire occurred.

7. The insurance companies denied liability on the policies surrendered for cancellation on March 22, 1916, whereupon the parties with whom the insurance certificates were hypothecated instituted suit against the insurance companies to enforce liability on the certificates of insurance. After considerable litigation the issue was decided favorably to the insurance companies, on the ground that the certificates of insurance were of no effect independently of the policies of insurance and that, the latter having been surrendered for cancellation, there was no existing liability on the part of the insurance companies at the time of the fire.

8. The taxpayer then discharged its debt to the holder of the certificates of insurance, with whom they had been hypothecated, and instituted suit in its own name on the remaining policies of insurance. This suit was abandoned and dismissed by plaintiff taxpayer in the latter part of 1918, or early in 1919, upon advice of counsel.

9. The taxpayer in its returns of income and profits taxes for the fiscal year ending July 31, 1919, deducted from its gross income $4,728.97 as bad debts ascertained to be worthless and charged off within that fiscal year.. On audit the Commissioner of Internal Revenue disallowed this amount as such deduction and restored the item to income, and on July 23, 1924, he notified the taxpayer by registered mail of his determination and of a deficiency in tax. On August 19, 1924, the taxpayer initiated this appeal by filing a petition with the Board.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

KORNER: This is an appeal by the taxpayer, Luke & Fleming, Inc., from a determination by the Commissioner of Internal Revenue asserting additional income and profits taxes for the fiscal year ending July 31, 1919. The taxpayer, a Georgia corporation, in its returns for that fiscal year deducted from gross income an amount of $4,728.97, claiming this amount to be a bad debt, ascertained to be worthless and charged off within the taxable year, under the provisions of section 234(a) (5), Revenue Act of 1918. The Commissioner disallowed this deduction from gross income, on the ground that the item deducted by the taxpayer as a bad debt had never, at any time, had an existence as a debt to the taxpayer. The facts are fully set forth in the foregoing findings of fact.

To entitle a taxpayer to deduct from gross income, as a bad debt, an item ascertained to be worthless and charged off in a given year, such a debt must have had an existence in fact. A debt which never existed can not be charged off. The right to a deduction arises from the discovery that something which had value has ceased to have it; a debt which never existed had no value to lose.

The facts here disclose that the policies of insurance were surrendered for cancellation before the occurrence of the fire which destroyed the cotton. The debt growing out of a liability incurred by an insurance company, under a policy of fire insurance, arises upon the happening of the event against which the policy insures, viz, the destruction by fire. If no policy of insurance was in force when the fire occurred, then the relation of debtor and creditor as between the insurance company and the taxpayer was not created.

The taxpayer contends that it *considered* the insurance company indebted to it from the time of the occurrence of the fire until early in the year 1919, when, upon advice of counsel, it concluded that such a debt could not be established. At the latter date it charged off as worthless the item which it had theretofore *considered* to be a debt. The fact that the taxpayer considered a debt to exist did not give the debt an existence in fact. And, as stated above, if the debt has no existence in fact it can not be charged off as worthless and deducted from gross income as a bad debt.

The taxpayer conceded at the hearing that the certificates of insurance were not independent contracts of insurance and had no force or effect independent of the policies of insurance they represented. Since the status of a debt could not be predicated on the policies of insurance which had been surrendered for cancellation, the certificates of insurance were likewise impotent in this respect.

The taxpayer has not shown a debt to have existed from the insurance company to it. It must follow that it is not entitled to take as a deduction from gross income, in the nature of a bad debt, the item of $4,728.97 here in question.

The issue as to whether or not the taxpayer, under these circumstances, would have been entitled to a deduction from gross income by reason of a loss is not raised in this record. This matter was touched upon in the argument of this appeal, but it was conceded by counsel for taxpayer that if under these circumstances a loss was sustained by the taxpayer, such loss was sustained in the year 1916 when the fire occurred. Since the taxpayer is not contending for a deduction by reason of such loss, in this appeal, counsel for both parties expressly waived a decision on this point.

The deficiency as determined by the Commissioner is approved.